UNITED STATES DISTRICT COURT
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER-OPINION**

December 28, 2009

Stanley G. Sheats, Esq.
Northeast New Jersey Legal Services, Inc.
152 Market Street
Paterson, New Jersey 07505

Andreea Lechleitner, Esq.
Special Assistant United States Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278

  Re: **Luis Carrasquillo v. Commissioner of Social Security**
     **Civil Action No.: 09-1883 (JLL)**

Dear Counsel:

  Presently before this Court is Plaintiff Luis Carrasquillo's appeal seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for disability pursuant to §§ 216(i) and 223(d) of the Social Security Act. The issue to be decided is whether the Commissioner's decision to deny Plaintiff's application for disability insurance benefits is supported by substantial evidence. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g). The Court has considered the submissions made in support of and in opposition to the instant appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court concludes that the Commissioner's determination is not supported by substantial evidence. The matter is remanded to the Commissioner for further consideration.

## I. FACTS AND PROCEDURAL HISTORY

  Plaintiff alleged a disability as of May 18, 1999. (R. at 16.) On September 29, 2005, Plaintiff filed applications for disability insurance benefits and supplemental security income,

1

which were initially denied on February 17, 2006. (Id.) Plaintiff's request for reconsideration was also denied. (Id.) On April 24, 2008, a hearing was held before Administrative Law Judge Michal L. Lissek. (Id.) On September 29, 2008, ALJ Lissek found that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act. (Id. at 16, 23.) Plaintiff appeals said decision.

Plaintiff was born on May 26, 1952 in Puerto Rico. He was educated up to the fifth grade before coming to the continental United States from Puerto Rico. (Id. at 22A, 312.) He cannot read or write in English or Spanish. (Id.) Plaintiff had a driver's license issued in Puerto Rico. (Id. at 20, 317.) He worked as a brick layer for fifteen years. (Id. at 311) In 1986, Plaintiff suffered a work related accident which resulted in the loss of his left eye. However, he continued to work. (Id. at 18, 310-311) Plaintiff stopped working in March 1992 due to dangers at his work-place associated with his eyesight. He has not worked since. (Id. at 18, 310-311.) On July 4, 2005, Plaintiff was assaulted with a baseball bat and received injuries to his right cheek. He was treated at St. Joseph's Regional Medical Center ("St. Joseph's"). (Id. at 19, 154.)

Plaintiff complains of a combination of impairments consisting of arthritis, loss of sight in the left eye due to his 1986 accident, depression and loss of hearing in the right ear due to the 2005 baseball bat incident. (Id. at 143; see also Pl's Br. at 8-12.) Plaintiff claims that his depression and anxiety stem from the July 2005 assault which has caused auditory hallucinations, nervousness, lack of concentration and attention span, stress, anger, diminished self esteem, and loss of sleep. (Id.) Plaintiff also claims impairment of the vision of his right eye stemming from his 1986 work-related accident. (Id. at 144.)

## II. LEGAL STANDARD

### A. Disability Defined

Under the Social Security Act, a claimant must demonstrate that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Regulations have set forth the following five-step, sequential evaluation procedure to determine whether a claimant is disabled:

> The sequential evaluation process is a series of five "steps" that are followed in a set order. If it is determined that the plaintiff is disabled or not disabled at a step, a decision is made and the evaluation will not go on to the next step. If a determination cannot be made that the plaintiff is disabled or not disabled at a step, the

2

evaluation will go on to the next step. The five steps are as follows:

(i) At step one, the Commissioner decides whether the plaintiff is currently engaging in substantial gainful activity. If she is not employed, then the Commissioner proceeds to step two.

(ii) At step two, the Commissioner must determine whether the plaintiff's impairment or combination of impairments is severe. If the impairment is not severe, the plaintiff is not disabled and the evaluation ends. If the plaintiff has a severe impairment, the analysis proceeds to the third step.

(iii) At step three, the Commissioner must decide whether the plaintiff suffers from a listed impairment. If the plaintiff meets a listed impairment requirement, he is disabled. If the plaintiff does not suffer from a listed impairment or its equivalent, then the analysis proceeds to step four.

(iv) Before considering step four, the Commissioner must first determine the plaintiff's residual functional capacity ("RFC"). At step four, the Commissioner determines whether based on plaintiffs RFC he can still do her past relevant work. If the plaintiff has the RFC to perform his past relevant work, he is not disabled. If he is unable to do any past relevant work, the analysis proceeds to the fifth step.

(v) Finally, at step five, the Commissioner must determine whether the plaintiff is able to do any other work available in the national economy, considering his RFC, age, education, and work experience. If the Commissioner cannot show that such work exists then the plaintiff is entitled to disability benefits.

20 C.F.R. § 404.1520(a)(4).

### B. Burden of Proof

The five-step sequential evaluation involves a shifting burden of proof. See Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant has the burden of establishing at step one that he has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If the claimant establishes this, he must next demonstrate, at step three, that his impairments singly or in combination are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If he makes this showing then he is presumed disabled. If he cannot show that he meets or exceeds a listed impairment, then at step four he must show that his RFC does not

3

permit him to return to his previous work. 20 C.F.R. § 404.1520(e). If the claimant cannot show this, then at step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). The burden only shifts to the Commissioner at step five; throughout steps one through four the burden lies entirely with the claimant. If the Commissioner cannot meet this burden at step five, the claimant shall be entitled to receive benefits. "For each of the first four prongs, a finding of 'not disabled' will end the inquiry; otherwise the inquiry will proceed to the next level." Alexander v. Shalala, 927 F. Supp. 785, 792 n.4 (D.N.J. 1995).

### C. Standard of Review

This Court must affirm an ALJ's decision if it is supported by substantial evidence. See 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). Thus, when "the [ALJ] is faced with conflicting evidence, [she] must adequately explain in the record [her] reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The District Court must review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, (3d Cir. 1984). But, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Where the ALJ's findings of fact are supported by substantial evidence, the Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999).

## III. DISCUSSION

### A. Summary of the ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 1997. (R. at 18.) At step one, the ALJ found that Plaintiff had not engaged in substantial work activity since March 30, 1992. (Id.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) blindness of the left eye since his 1986 accident; and (2) depressive order since the July 2005 assault. (Id. at 18-19.)

At step three, the ALJ found that "[t]he claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Id.) First, the ALJ "concur[red] with medical expert opinion of Dr. Herbert Hein that the claimant's visual impairment does not meet or equal any of the ophthalmologic listed impairments." (Id. at 19.) Second, the ALJ found that Plaintiff's "mental impairment does not meet or medically equal the criteria of listing 12.04" for affective disorder. (Id. at 19-20.) The ALJ did not discuss the combination of impairments

4

Prior to step four, the ALJ found that "since July 1, 2005, the claimant had the residual functional capacity to perform a full range of work at all exertional levels." (Id.) The ALJ noted Plaintiff has the following nonexertional limitations:

> [H]e must avoid working at jobs requiring binocular vision but he is capable of handling and working with any sized object and he is capable of avoiding ordinary workplace hazards; and he is limited to unskilled work which entails understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.

(Id. at 20-21.) The ALJ also found that:

> Through December 31, 1997, the claimaint had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations; he must avoid working at jobs requiring good binocular vision but he is capable of handling and working with any sized object and he is capable of avoiding ordinary workplace hazards. No mental limitations existed through date last insured.

(Id. at 21.) At step four, the ALJ also found that Plaintiff has not had past relevant work since 1992. (Id. at 22A.)

At step five, the ALJ considered Plaintiff's RFC and the following vocational factors: (1) Plaintiff was 39 years old on the alleged disability onset date (1992); (2) he had a marginal education; and (3) he was able to communicate in English. (Id. at 22A.) The ALJ also relied on SSR 85-15 and determined that Plaintiff's nonexertional limitations stemming from his visual and mental impairments "have little or no effect on the occupational base of unskilled work at all exertional levels." (Id. at 23.) Accordingly, the ALJ applied Rule 204.00 of the Medical-Vocational Guidelines and found that "[c]onsidering the claimant's age, education, work experience, and residual factual capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id. at 22A.) In light of this finding, the ALJ concluded Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Id.)

B. **Analysis**

Plaintiff's appeal challenges, among other things, (1) the ALJ's assessment at step three; (2) the ALJ's decision not to give weight to Dr. Louis Arroyo's medical opinion that Plaintiff is disabled and cannot work; and (3) the ALJ's decision to not consider additional vocational evidence at step five despite his finding that Plaintiff had non-exertional limitations. Each challenge will be addressed in turn.

### 1. *The ALJ's Assessment at Step Three*

Plaintiff argues the ALJ's finding at step three that Plaintiff's mental impairment does not meet or medically equal listed impairment 12.04, pertaining to affective disorder, is not supported by substantial evidence. (Pl's Br., at 18-25.) The provisions for Listing 12.04 are as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied:
>
> > A. Medically documented persistence, either continuous or intermittent, of one of the following:
> >
> > > 1. Depressive syndrome characterized by at least four of the following:
> > >
> > > > a. Anhedonia or pervasive loss of interest in almost all activities; or
> > > > b. Appetite disturbance with change in weight; or
> > > > c. Sleep disturbance; or
> > > > d. Psychomotor agitation or retardation; or
> > > > e. Decreased energy; or
> > > > f. Feelings of guilt or worthlessness; or
> > > > g. Difficulty concentrating or thinking; or
> > > > h. Thoughts of suicide; or
> > > > i. Hallucinations, delusions, or paranoid thinking; or

. . . .

AND

> > B. Resulting in at least two of the following:
> >
> > > 1. Marked restriction of activities of daily living; or
> > > 2. Marked difficulties in maintaining social functioning; or
> > > 3. Marked difficulties in maintaining concentration,

> persistence, or pace; or
> 4. Repeated episodes of decompensation, each of
> extended duration
>
> . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. With respect to the 12.04 paragraph B criteria, "marked" is used "as a standard for measuring the degree of limitation, it means more than moderate but less than extreme." Id. at §12.00(C).

Here, the ALJ held that "[b]ecause the claimant's mental impairment does not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, the paragraph B criteria are not satisfied."[1] (R. at 20.) As to the first paragraph B criteria of 12.04, the ALJ found that Plaintiff has "mild" restriction in activities of daily living. (Id.) To support this finding the ALJ stated:

> The claimant lives with his wife and 6 or 7 children. He shares in household tasks and does have driver's license issued in Puerto Rico. He can travel independently and he handles his own personal care.

(Id.) However, the ALJ did not address or give any reason for rejecting medical evidence in the record that could support Plaintiff's "marked" restriction in activities of daily living. For instance, the ALJ did not refer to an excerpt from Dr. Mark Weber's October 29, 2005 examination report indicating that Plaintiff "sometimes needed assistance with activities of daily living." (Id. at 166.) The ALJ did not address treatment notes from St. Joseph's Hospital indicating Plaintiff was experiencing sleep disturbance and other major depressive symptoms. (Id. at 220; 229; 243.) Also, the ALJ did not address Dr. Arroyo's medical conclusion that Plaintiff's "impairments had a deleterious impact on his daily functioning. (Id. at 265.)

Moreover, the ALJ did not adequately address why he rejected or found unreliable statements and testimony in the record that could support Plaintiff's "marked" restriction in activities of daily living. The ALJ did not discuss statements made by Plaintiff's son, Luis M. Carrasquillo, in the October 7, 2005 Function Report-Adult which indicate that Plaintiff does no household chores, does not cook, was very depressed, and has difficulty getting "started." (Id. at 98-103.) Further, the ALJ did not address Plaintiff's testimony that he did not clean the house "[b]ecause I start. I just sit down. I leave everything behind;" "I used to play ball with my kids, basketball and everything and [n]ow I'm not doing nothing with them." He testified that his wife or son must accompany him in the shower, and that he can't carry shopping bags because "[t]hey're too heavy." (Id. at 324-325.) The ALJ does state that Plaintiff "shares in household tasks" and "handles his own personal care," but does so without referencing evidence or providing an explanation for rejecting it. Also, the ALJ did not adequately address Plaintiff's testimony regarding his limitations on travel, including testimony that he doesn't travel alone; he

---

[1] There is no dispute between the parties that Plaintiff meets six (6) of the Part A(1) criteria with respect to depressive syndrome.

7

always travels with his wife; he takes the bus or a taxi to get around; and he doesn't currently have a license, although he *had* one in Puerto Rico. (Id. at 317, 319, 326.) Again, the ALJ stated that Plaintiff "can travel independently" and "does have driver's license issued in Puerto Rico" but does not indicate why he rejected supporting evidence or why he was discrediting Plaintiff's testimony that could otherwise support a finding of "marked" restriction in activities of daily living.

The government argues that portions of Plaintiff's testimony are unsupported by treatment notes from St. Joseph's Hospital indicating that Plaintiff tried to remain active, had positive daily living, and denied that he experienced adverse side effects from his medications. (Def's Br., at 8.) Regardless of the government's position, the ALJ did not reference or explain away this conflicting evidence in reaching the decision that Plaintiff had mild difficulty in activities of daily living. (R. at 20.) Without such an explanation it is difficult to make a meaningful judicial review of his findings.

Also, as to the third criteria in paragraph B, the ALJ found that Plaintiff had "moderate" difficulties with regard to concentration, persistence, or pace. (Id.) The ALJ acknowledged that Plaintiff "has symptoms of depression and anxiety and a low stress tolerance which would impact on his ability to concentrate, persist and keep pace with job tasks." (Id.). This was the extent of the ALJ's analysis for the third paragraph B criteria. (Id.)

The ALJ did not refer to medical evidence or explain the basis for his finding of moderate difficulty in concentration, persistence, or pace. The ALJ did not address the excerpt in Dr. Miskin's October 25, 2005 report indicating that Plaintiff "is poorly cooperative for testing for concentration or attention span" and "protested that he was too tired and nervous to focus on the task at hand." (Id. at 209.) The ALJ also did not address Dr. Arroyo's medical opinion that Plaintiff "suffered from poor concentration." (Id. at 265.) The government in its brief does list treatment records from St. Joseph that indicate that Plaintiff has no impairment in alertness, attention span, or distractibility. However, the ALJ neither referenced this evidence in his opinion, nor explained how it causes only "moderate" difficulties in Plaintiff's concentration, persistence, or pace. (Id. at 20; see also Def's Br., at 9.) There is also no reference to the testimony and statements that could support a finding of Plaintiff's marked difficulty in concentration, persistence or pace. As noted above, Plaintiff's testified that he did not cook because he would leave items on the stove to burn and that he did not clean the house "[b]ecause I start. I just sit down. I leave everything behind." The testimony was not addressed with respect to the third paragraph B criteria (Id. at 325.), nor was Plaintiff's son's statement that Plaintiff gets confused when he gets up from sitting. (Id. at 106.)

State agency medical consultants Dr. Fran Hecker and Dr. L. Meade do indicate that Plaintiff did not meet the paragraph B criteria in Listing 12.04. (Id. at 188-204.) Both doctors concluded that Plaintiff had moderate restriction in activities of daily living; mild difficulties in social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation. (Id. at 198.) The ALJ, however, does not explain what role these doctors' opinions played is his finding that Plaintiff does not meet two of the four paragraph B criteria for Listing 12.04 in light of the other evidence previously noted. (Id. at 20.)

8

Finally, there is no discussion in the ALJ's opinion at step three as to why the combination of Plaintiff's visual and mental impairments does not meet or medically equal a listed impairment. (Id. at 19-20.) The ALJ did address both of Plaintiff's impairments separately at step three. However, there is no discussion as to why the combination of both impairments does not meet a listed impairment.

In light of the foregoing, the Court finds that the ALJ's failure to adequately explain his reasons for rejecting or discrediting conflicting evidence in finding that Plaintiff does not meet the paragraph B criteria for Listing 12.04 makes that decision incapable meaningful judicial review. Also, since there is no discussion as to why Plaintiff's combination of impairmentsdoes not meet or medically equal a listed impairment, the Court finds that the ALJ's finding that Plaintiff does not have an impairment that meets a listed impairment, including Listing 12.04, is not based on substantial evidence. Accordingly, this Court orders that on remand, at step three, the Commissioner must re-evaluate the conflicting evidence in the record and provide a detailed analysis and explanation as to (1) why Plaintiff does not meet the paragraph B criteria of Listing 12.04, and (2) why Plaintiff's combination of visual and mental impairments does not meet or medically equal a listed impairment.

Because the Court finds a remand is appropriate in light of the ALJ's analysis at step three, the Court need not address any additional issues raised by Plaintiff. However, the Court will also address the ALJ's rejection of Dr. Louis Arroyo's medical opinion and his analysis at step five.

### 2. *The ALJ's Decision to Give No Weight to Dr. Arroyo's Opinion*

Plaintiff argues that the ALJ erred in disregarding the medical opinion of Dr. Arroyo, Plaintiff's treating psychiatric physician at St. Joseph's Hospital, which supports a finding that Plaintiff met Listing 12.04 at step three. (R. at 22; Pl's Br., at 11-14.) Dr. Arroyo's August 5, 2008 letter indicated that Plaintiff has symptoms of psychiatric disorder and depressive disorder which render Plaintiff "disabled and unable to work or train for work at this time." (Id. at 265.) However, in his RFC assessment the ALJ stated that "due to inconsistency of mental treatment notes and his opinion" in the letter, "I do not give any weight to Dr. Arroyo's opinion that the claimant is unable to work." (Id. at 22A.)

Under the Social Security regulations, "[a] statement by a medical source that you are "disabled" or "unable to work" does not mean that [the Social Security Administration ("SSA")] will determine that [the claimant is] disabled." 20 C.F.R. §§ 404.1527(e), 416.927(e). With respect to how the SSA weighs medical opinions, it will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]" and, generally, "the longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the SSA] will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d). Also, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the SSA] will give the opinion." Id. Finally, "the

9

more consistent an opinion is with the record as a whole, the more weight [the SSA] will give to that opinion." Id.

Here, the ALJ referred to treatment notes from St. Joseph's that were inconsistent with Dr. Arroyo's opinion. (R. at 22A; 211-250.) The ALJ referenced treatment notes in August 2006 and January 2007 that Plaintiff is psychiatrically stable. (Id.) The ALJ explained that mental examination charts "have repeatedly been completed as "N/A or OK" for the majority of [psychotic and depressive disorder] symptoms." (Id.) The ALJ explained that the absence of additional treatment notes regarding Plaintiff's auditory hallucinations "hardly depicts an individual suffering from ongoing psychosis." (Id.) The ALJ also noted that Plaintiff's March 6, 2006 "global assessment of functioning (GAF) was 60, which is consistent with the moderate symptoms." (Id. at 234.) Based on the foregoing, the ALJ "concluded that treatment notes do not indicate a level of impairment *which precludes all work activity.*" (Id. at 22A.) (emphasis added).) However, Dr. Arroyo's opinion that Plaintiff was "disabled" and "cannot work" was also supported by treatment notes dated from March 2006 through August 2008. These notes indicate that Plaintiff's depression and symptoms were severe, and that he was experiencing anxiousness, sleep disturbance, and stress. (Id. at 220; 226; 229; 238; 243.)

Dr. Arroyo was Plaintiff's examining physician since July 2005. Therefore, his opinion was entitled to some weight in determining that Plaintiff was unable to work in light of the medical evidence referenced above and in consideration of the duration of his treatment of Plaintiff as examining physician. The ALJ however is permitted to give less weight to Dr. Arroyo's opinion in light of the ALJ's explanation of inconsistent medical evidence. Nevertheless, although the ALJ appropriately discusses Dr. Arroyo's medical opinion with respect to Plaintiff's RFC determination, there is no discussion at all of Dr. Arroyo's opinion at step three of the ALJ's opinion. (Id. at 19-20; 22-22A.) Therefore, on remand the ALJ must: (1) adequately explain his reasons for rejecting or discrediting Dr. Arroyo's opinion and supporting evidence with respect to Plaintiff's ability or inability to meet the paragraph B criteria in Listing 12.04, and (2) indicate the amount of weight, if any, he is giving to Dr. Arroyo's opinion and why.

### 3. *The ALJ's Failure to Consider Additional Vocational Evidence at Step Five*

At step five, the ALJ found that Plaintiff's "visual and mental impairments do not preclude his ability to perform unskilled work which does not require binocular vision." (R. at 23.) In light of these non-exertional limitations, Plaintiff argues that the ALJ erred in applying the Medical-Vocational Guidelines ("guidelines") at step five because the ALJ did not take additional vocational evidence pursuant to Sykes v. Apfel, 228 F.3d 259, 261 (3d Cir. 2000). The Sykes court held that

> *in the absence of a rulemaking establishing the fact of an undiminished occupational base*, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational

> evidence establishing as much or providing notice to the claimant of his intention to make official notice of this fact.

(Id. at 261) (emphasis added). The Third Circuit has further determined that "if the [Commissioner] wishes to rely on an [Social Security Ruling] *as a replacement for a vocational expert*, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Poulous v. Comm'r of SSA, 474 F.3d 88, 94 (3d Cir. 2007) (emphasis added) (citing Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005).) Thus, the ALJ may rely upon an SSR as a replacement of additional vocational evidence if the SSR is clearly probative as to the way a plaintiff's nonexertional limitations impact his ability to work.

Here, the ALJ relied on SSR 85-15 in determining that, although Plaintiff can perform work at all exertional levels, his mental and visual impairments do not preclude his ability to perform unskilled work which does not require binocular vision. (R. at 23.) With respect to Plaintiff's mental impairments and restriction to unskilled work, SSR 85-15 provides in pertinent part:

> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupation base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with *solely mental impairments* who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis. However, persons with this large job base may be found disabled because of adversities in age, education, and work experience.

SSR 85-15, *available at* 1985 SSR LEXIS 20, at *11-12 (emphasis added). With respect to Plaintiff's visual impairment and limitation restricting him from jobs requiring binocular vision, SSR 85-15 provides in pertinent part:

> As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels. However, a finding of disability could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential.

11

Id. at 20-21.

It is evident that SSR 85-15 provides that sufficient unskilled jobs remain in the national economy despite a claimant's mental *or* visual limitations. However, it does not appear that SSR 85-15 provides guidance on job opportunities with respect to claimants with a *combination* of mental and visual impairments. Since Plaintiff has both visual and mental impairments, it is not clear that SSR 85-15 is probative as to the way Plaintiff's nonexertional limitations impact his ability to work. Accordingly, if upon remand the ALJ again reaches the step five analysis, additional vocational evidence should be received and considered.

## IV. CONCLUSION

In light of the foregoing, this Court finds that the ALJ's opinion is not supported by substantial evidence at step three with regard to the finding that Plaintiff's mental and visual impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Further, the ALJ did not discuss reasons for rejecting Dr. Arroyo's medical opinion at step three of the ALJ's opinion. Finally, at step five the ALJ should receive and consider additional vocational testimony. Therefore, a remand is appropriate as set forth above. An appropriate Order accompanies this Letter Opinion.

DATED: December 28, 2009

                                             s/ Jose L. Linares
                                             UNITED STATES DISTRICT JUDGE